IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO: 9:21cv80306

PHILADELPHIA INDEMNITY INSURANCE COMPANY, a foreign corporation,

     Plaintiff,

v.

THERMA SEAL ROOF SYSTEMS, LLC, a Florida limited liability company; MANGONIA PROPERTIES, LLC, a dissolved Florida limited liability company; DAVE WIKEL, a Florida resident; and CHERYL LEE WIKEL, a Florida resident;

     Defendants.
_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC"), by and through undersigned counsel, files this Complaint for Damages and Injunctive Relief against Defendants, THERMA SEAL ROOF SYSTEMS, LLC ("THERMA SEAL"); MANGONIA PROPERTIES, LLC ("MANGONIA"); DAVE WIKEL; and CHERYL LEE WIKEL and alleges as follows:

### INTRODUCTION

1. PIIC commences this action for damages and injunctive relief based upon the breach by THERMA SEAL, MANGONIA, DAVE WIKEL and CHERYL LEE WIKEL (collectively the "Indemnitors") of the General Indemnity Agreement (the "Indemnity Agreement") executed by the Indemnitors in favor of PIIC on or about May 22, 2017.

2. Under the Indemnity Agreement, the Indemnitors are jointly and severally obligated to indemnify and hold harmless PIIC from and against any and all liability, losses, costs, expenses, and fees of whatever kind and nature that PIIC may sustain or incur as a result of executing any Bond, or as a result of the failure of Indemnitors to perform or comply with the Indemnity Agreement.  In addition, the Indemnitors are obligated to deposit collateral security on demand with PIIC an amount equal to the amount of any claim or demand that is asserted against PIIC plus PIIC'S estimate of costs and expenses that may be incurred while paying compromising, resisting, defending, trying or appealing the claim or demand.  Moreover, the Indemnitors are required to provide to PIIC updated financial statements upon request.

3. Based on the rights conveyed by the Indemnity Agreement, PIIC provided surety payment and performance bonds on behalf of THERMA SEAL, as principal, for the Delta FLL Terminal 2 Modernization project ("Delta Terminal Project") and the 321 at Waters Edge project ("Waters Edge Project").  PIIC has received claims under these bonds and has incurred costs and expenses in investigating and handling of these claims.

4. Based upon claims made and losses incurred, PIIC demanded indemnity, a collateral security deposit, and updated financial statements from the Indemnitors.

5. Despite these demands, the Indemnitors have breached their obligations under the Indemnity Agreement by failing and refusing to indemnify, to provide a collateral security deposit, and acceptable updated financial statements to PIIC.

6. As a result, PIIC now brings this action to recover its damages, losses, costs and expenses in an amount to be determined, as well as specific performance of the Indemnity Agreement requiring the Indemnitors to provide PIIC with updated financial statements and deposit collateral security in the amount of PIIC's losses and potential losses as a result of having

provided a surety payment and performance bonds on behalf of THERMA SEAL. The current estimated losses are no less than $1,075,000.00.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the parties pursuant to 28 U.S.C. 1332(c)(1) and 28 U.S.C. 1332(a) because the Plaintiff and Defendants are citizens of diverse states.

8. Plaintiff, PIIC, is a corporation organized and existing under the laws of the State of Pennsylvania and maintains its principal place of business in the State of Pennsylvania, making it a citizen of Pennsylvania in accordance with 28 U.S.C. § 1332(c)(1). PIIC is licensed to conduct business in Florida.

9. Defendant, THERMA SEAL, is a limited liability company organized and existing under the laws of the State of Florida and maintains its principal place of business in Palm Beach County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1). Upon information and belief, all members of THERMA SEAL are Florida citizens.

10. Defendant, MANGONIA, is a dissolved limited liability company that was organized and existed under the laws of the State of Florida and maintained its principal place of business in Palm Beach County, Florida, making it a citizen of Florida in accordance with 28 U.S.C. § 1332(c)(1). Upon information and belief, all members of MANGONIA are Florida citizens.

11. Defendant, DAVE WIKEL, upon information and belief, is a citizen of the State of Florida with his primary residence in Palm Beach County, Florida, making him a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

12. Defendant, CHERYL LEE WIKEL, upon information and belief, is a citizen of the State of Florida with her primary residence in Palm Beach County, Florida, making her a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

13. The causes of action alleged herein fall within the jurisdictional limits of the Court because PIIC is seeking to recover more than $75,000.00 from the Defendants, excluding costs, interest, and attorney's fees.

14. Venue is appropriate because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Southern District of Florida, and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the West Palm Beach Division of this Court.

## GENERAL ALLEGATIONS

15. As part of its business, PIIC issues surety payment and performance bonds and stands as surety for certain contractors.

16. In connection with its work, THERMA SEAL from time to time required surety payment and performance bonds.

17. To induce PIIC to issue surety payment and performance bonds on behalf of THERMA SEAL, on or about May 22, 2017, the Indemnitors executed an Indemnity Agreement in favor of PIIC. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "A."**

18. Pursuant to Paragraph 3 of the Indemnity Agreement, the Indemnitors agreed, among other things, that they would, jointly and severally:

> indemnify and hold harmless [PIIC] from and against any Liability & Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Principals or Indemnitors to perform or comply with any of the

covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement.

19. Pursuant to Paragraph 1(i) of the Indemnity Agreement, Liability & Loss is defined as follows:

> Any and all liability, losses, costs, expenses, and fees of whatever kind or nature that [PIIC] may sustain or incur as a result of executing any Bond, or as a result of the failure of Principals, or Indemnitors to perform or comply with this Agreement. Liability & Loss includes but is not limited to: (i) the face amount of any claim or demand that is asserted against [PIIC] under any Bond(s) plus [PIIC's] estimate of the costs and expenses [PIIC] may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in [PIIC's] sole discretion) (ii) sums posted by [PIIC] as a reserve for the payment of potential losses and/or expenses; (iii) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; …

20. In the event that PIIC is exposed to Liability & Loss, PIIC is entitled to demand that the Indemnitors deposit sufficient collateral security with PIIC to indemnify and hold PIIC harmless for the potential Liability and Loss.

21. Specifically, Paragraph 4 of the Indemnity Agreement states:

> Principals and Indemnitors agree to deposit collateral immediately upon demand by [PIIC] an amount equaling any and/or all of the following: (a) the face amount of any claim or demand that is asserted against [PIIC] under any Bond(s) plus [PIIC's] estimate of the costs and expenses [PIIC] may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in [PIIC's] sale discretion); (b) sums posted by [PIIC] as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses  incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses;…(f) all other amounts payable to [PIIC] according to the

> terms and conditions of this Agreement or any other agreement between [PIIC] and Principals or Indemnitors….The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by [PIIC] regardless of whether they dispute their liability for any Liability & Loss or potential Liability & Loss or assert any defenses to the validity or enforcement of this Agreement….Principals and Indemnitors acknowledge that their duty to deposit collateral security under this Paragraph is specifically enforceable because [PIIC] lacks an adequate remedy at law and their failure to deposit collateral with [PIIC] as required by this Paragraph will cause irreparable harm as to justify injunctive relief compelling the deposit of collateral…

22. As cited, supra, in Paragraph 4 of the Indemnity Agreement, the Indemnitors acknowledged and agreed that PIIC would be irreparably harmed and have no adequate remedy at law for any failure of the Indemnitors to immediately deposit the sum demanded by PIIC as collateral security.

23. In the event that claims are made against any surety bonds issued by PIIC, under Paragraph 9 the Indemnity Agreement, "[PIIC] shall have the exclusive right, in its sole discretion, to decide and determine whether any claim, liability, suit or judgment made or brought against [PIIC] on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, on the basis of [PIIC's] Good Faith belief that it is or could be liable or because [PIIC] deems it necessary or expedient to do so, and [PIIC's] decision thereon shall be final and binding upon the Indemnitors."

24. Pursuant to Paragraph 11 of the Indemnity Agreement, "Upon the request of [PIIC], Principals and Indemnitors will procure the discharge of [PIIC] from any Bond, and all liability arising therefrom, and provide evidence to [PIIC] regarding same."

25. Pursuant to Paragraph 12 of the Indemnity Agreement, the Indemnitors are obligated to provide updated financial statements to PIIC upon request.

26. In event of Default, the Indemnity Agreement provides that the Principal and Indemnitors assign, transfer, and set over to PIIC all of their rights under all Bonded Contract(s) including:

> a. their right, title and interest in all subcontracts, purchase orders, and any surety bonds supporting such agreements, let in connection therewith;
> b. all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for use in connection with the Bonded Contract(s) including all materials ordered or fabricated for the Bonded Contract(s);
> c. all claims and causes of action against any parties to the Bonded Contract(s) or against third parties arising from or relating to the Bonded Contract(s);
> d. any and all sums dues, or to become due under the Bonded Contract(s), including all monies earned or unearned which are unpaid at the time of notice from Surety to Obligee regarding such sums;
> e. all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights required for the performance of the work for which [PIIC] has issued bonds, and expressly authorize [PIIC] to use these property rights as required in [PIIC's] discretion to complete the Bonded Contract(s); and
> f. any other rights to payment from any person or entity in relation to the Bonded Contract(s), including but not limited to, any insurance proceeds or premium refunds, any tax or assessment refunds, or any rights to payment by virtue of participation in a partnership, joint venture or the like.

*See Indemnity Agreement.* at ¶ 5.

27. Pursuant to Paragraph 1(h) of the Indemnity Agreement, "Default" is defined, in relevant part, as:

> Any instance or condition where Principals or Indemnitors have or alleged to have:…(ii) forfeited, breached abandoned, repudiated, or defaulted any Bonded Contract; (iii) neglected or refused to pay for any indebtedness for labor, materials, or services used in the prosecution of a Bonded Contract; (iv) failed to honor any obligation under this Agreement;…or (x) failed to procure the discharge of [PIIC] from any Bond upon [PIIC's] request.

28. The Indemnity Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and exonerate PIIC as a result of executing surety payment and performance bonds on THERMA SEAL's behalf or because of THERMA SEAL's, or the Indemnitors' failure to comply with the Indemnity Agreement.

29. After the Indemnitors entered into the Indemnity Agreement with PIIC, THERMA SEAL entered into multiple construction contracts (the "Bonded Contracts") for various projects (collectively, the "Projects") for which it required surety payment and performance bonds, including but not limited to:

   a. a Bonded Contract with Turner Construction Company ("Turner") for the Delta Terminal Project; and

   b. a Bonded Contract with Kaufman Lynn Construction, Inc. ("Kaufman") for the Waters Edge Project.

30. At the Indemnitors request and in reliance upon the rights conveyed by the Indemnity Agreement, PIIC agreed to issue the following surety payment and performance bonds (the "Bonds") for the Projects:

   a. Bond No. PB12159900179 for the Delta Terminal Project ("Delta Terminal Bond");

   b. Bond No. PB12159900165 for the Waters Edge Project ("Waters Edge Bond")

Copies of the Bonds are attached hereto as **Composite Exhibit "B."**

31. Since the issuance of the Bonds, Turner and Kaufman have issued defaults against THERMA SEAL on the Bonded Contracts for both the Delta Terminal Project and the Waters

Edge Project, respectively. Consequently, both Turner and Kaufman have made claims against the Bonds issued by PIIC which collectively exceed $1,000,000.00.

32. Additionally, based upon THERMA SEAL's accounts payable report for the Delta Terminal Project and THERMA SEAL's inability to pay its subcontractors and suppliers, PIIC anticipates additional claims made against Delta Terminal Bond by unpaid subcontractors and suppliers ("Payment Bond Claimants").

**33.** Based upon the claims made by Turner, Kaufman and the anticipated claims by the Payment Bond Claimants, on January 26, 2021, PIIC demanded in writing that the Indemnitors pursuant to Paragraph 11 of the Indemnity Agreement immediately obtain the full and complete discharge of PIIC from the Bonds currently issued on behalf of THERMA SEAL for the Projects. In the event that a full and complete discharge could not immediately be obtained, PIIC demanded that the Indemnitors deposit collateral security in the amount of $1,075,000.00 which was based upon claims made and PIIC's best estimate of the exposure under the Bonds issued on behalf of THERMA SEAL. A copy of PIIC's January 26, 2021, Demand Letter is attached hereto as **Exhibit "C."**

34. The Indemnitors failed and refused to either obtain the full and complete discharge of PIIC under the Bonds or to deposit any collateral security with PIIC.

35. Due to the Indemnitors' failure to deposit collateral security with PIIC, on February 2, 2021, PIIC requested that DAVE WIKEL and CHERYL LEE WIKEL provide updated financial statements. A copy of the February 2, 2021, Request for Update Financial Statements is attached **Exhibit "D."**

36. DAVE WIKEL AND CHERYL LEE WIKEL have failed to comply in an acceptable manner with PIIC's request for updated financial statements thus far.

37. As a result, the Indemnitors are in breach of their obligations under the Indemnity Agreement. The Indemnitors' breach has caused PIIC to incur or sustain damages in an amount yet to be determined, but estimated at no less than $1,075,000.00, as well as other damages for which it has no adequate remedy at law.

38. PIIC has retained the undersigned counsel to maintain this action and is obligated to pay counsel a reasonable fee. Pursuant to Paragraph 3 of the Indemnity Agreement, PIIC is entitled to recover the attorney's fees incurred in this matter.

39. PIIC has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Indemnity Agreement or has been excused from doing so by Indemnitors

40. All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## BREACH OF CONTRACT AGAINST INDEMNITORS

41. PIIC realleges and reaffirms allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42. Under the terms of the Indemnity Agreement, the Indemnitors are obligated, jointly and severally to indemnity and exonerate and hold PIIC harmless for all liability, losses, costs, expenses, and fees of whatever kind or nature that [PIIC] may sustain or incur as a result of executing any Bond, or as a result of the failure of Principals, or Indemnitors to perform or comply with this Agreement.

43. Pursuant to the Indemnity Agreement, the Indemnitors also agreed to, upon PIIC's demand, "to deposit collateral immediately upon demand by PIIC" an amount necessary to cover all Liability & Loss by PIIC.

44. Pursuant to the Indemnity Agreement, the Indemnitors committed various breaches and defaults, including but not limited to:

   a. Being defaulted by Turner and Kaufman under the Bonded Contracts for which the Bonds were issued;

   b. Neglecting and/or refusing to pay for indebtedness to subcontractors and suppliers on the Delta Terminal Project;

   c. Failing and/or refusing to deposit collateral security with PIIC;

   d. Failing and/or refusing to provide updated financial statements; and

   e. Failing and/or refusing to procure the discharge of PIIC from the Bonds.

45. As a result of the foregoing breaches and defaults by the Indemnitors, PIIC has incurred and will continue to incur substantial losses, liability, damages and expenses in an amount yet to be determined, but currently estimated at no less than $1,075,000.00.

46. In addition, PIIC is entitled under the Indemnity Agreement to recover its attorneys' fees and costs incurred in enforcing its rights under the Indemnity Agreement.

WHEREFORE, PIIC respectfully requests that this Court enter judgment against the Indemnitors, jointly and severally, for damages, costs, interest, attorneys fees and such other relief as this Court deems necessary, just, and proper.

## COUNT II
## COMMON LAW INDEMNITY AGAINST THERMA SEAL

47. PIIC realleges and reaffirms allegations contained in paragraphs 1 through 40 as if fully set forth herein.

48. PIIC is without fault for the claims made by Turner, Kaufman and the anticipated Payment Bond Claimants.

49. PIIC had a special relationship with THERMA SEAL by virtue of issuing the Bonds.

50. PIIC has acted as surety for THERMA SEAL in connection with the Bonds and, in its capacity as surety, has expended and may expend funds on behalf of THERMA SEAL. PIIC's liability for the expenditure of funds is merely technical, secondary, derivative and vicarious of the liability of THERMA SEAL and is solely due to the actions of THERMA SEAL without any independent or contributing fault on the part of PIIC.

51. As a result, PIIC is entitled to reimbursement from THERMA SEAL for the costs and expenses incurred by PIIC in connection with the Bonds and any claims asserted under them.

52. THERMA SEAL has failed and refused to indemnify PIIC in connection with these claims and payments. As a result, PIIC, as surety, is entitled to a judgment in an amount yet to be determined, but estimated at no less than $1,075,000.00, as well as prejudgment interest, based upon its common law rights to indemnification and reimbursement from THERMA SEAL.

53. PIIC's damages will continue to increase as PIIC incurs future consulting fees, attorney's fees and costs investigating, defending and handling the various claims made against the Bonds.

54. PIIC is entitled to receive its reasonably incurred consultant fees, attorney's fees and costs pursuant to applicable Florida law.

WHEREFORE, PIIC respectfully requests that this Court enter judgment against THERMA SEAL for damages, costs, interest, attorney's fees and any such other relief as this Court deems necessary, just, and proper.

## COUNT III
## CONTRACTUAL AND COMMON LAW EXONERATION AGAINST INDEMNITORS

55. PIIC realleges and reaffirms allegations contained in paragraphs 1 through 40 as if fully set forth herein.

56. This is an action for exoneration seeking equitable relief.

57. As of June 21, 2017, the Indemnitors were obligated under the Indemnity Agreement to collateralize and exonerate PIIC in the amount of $1,075,000.00 for losses and expenses that PIIC has incurred or reasonably anticipates incurring as a result of issuing the Bonds. Additional indebtedness due and owning from the Indemnitors to PIIC under the Indemnity Agreement will continue to accrue.

58. By virtue of PIIC's right of exoneration set forth in the Indemnity Agreement, as well as at common law and in equity, PIIC is entitled to have the Indemnitors' assets collateralize PIIC against loss and/or discharge PIIC's primary obligations under the Bonds prior to such time as PIIC should be required to expend its own funds, or to have the Indemnitors place funds or other security with PIIC sufficient to cover the losses sustained or reasonably expected to be sustained by PIIC under the Bonds.

59. PIIC made a demand upon the Indemnitors for the deposit of the Indemnitors' assets in the amount $1,075,000 as collateral. Despite PIIC's demand, the Indemnitors have failed and/or refused to deposit such collateral.

60. The Indemnitors have breached their obligations under the Indemnity Agreement by refusing to exonerate or otherwise place funds with PIIC sufficient to cover the actual or potential losses and claims under the Bonds.

61. Unless the personal and corporate assets of the Indemnitors are deposited as collateral, PIIC will not be adequately secured for its obligations under the Bonds.

62. PIIC is fearful and apprehensive that the Indemnitors are or will become financially unable to pay amounts that may be owed to the obligees and/or claimants under the Bonds for which PIIC may be liable, or the expenses, including but not limited to attorney's fees, incurred by PIIC as a result of its suretyship of THERMA SEAL.

63. PIIC is also fearful and apprehensive, based on the Indemnitors' refusal to exonerate PIIC in accordance with its demands, that the Indemnitors will sell, transfer, dispose of, encumber, lien, secure or otherwise divert or conceal their assets.

64. Unless relief in the nature requested herein is granted, the contractual and equitable right of exoneration of PIIC will forever be lost, depriving PIIC of its bargained-for right to adequate security from the Indemnitors for PIIC's actual and potential obligation to make payments and/or incur costs and expenses as a result of having issued the Bonds to THERMA SEAL.  Further, unless the relief requested herein is granted, the Indemnitors are likely to sell, transfer, dispose of, encumber, lien, secure or otherwise divert or conceal their assets from being used to discharge the Indemnitors' obligations to exonerate and indemnify PIIC.

65. PIIC will suffer irreparable damage and loss because its bargained-for right of contractual exoneration, which is essential and necessary to the Indemnity Agreement, will be rendered nugatory and of no effect.

66. PIIC has no adequate remedy at law, and the equitable relief sought herein constitutes the only means by which PIIC can secure adequate relief and by which justice may be served.

67. PIIC has a high probability of success on the merits.  PIIC has performed all of its duties and obligations under the Indemnity Agreement, and the Indemnity Agreement provides for the relief sought herein.

68. The threatened injury to PIIC outweighs any potential damage to the Indemnitors if the relief requested herein is granted. Additionally, such relief would not be adverse to the public interest.

WHEREFORE, Plaintiff, PIIC, respectfully requests that this Court enter a Final Judgment in its favor and against the Indemnitors, requiring the Indemnitors to perform under the Indemnity Agreement as follows:

(a) Pay and reimburse PIIC for the sums that PIIC has incurred to date as a result of having furnished the Bonds;

(b) Provide collateral to PIIC sufficient to exonerate PIIC for the potential losses and expenses to be incurred;

(c) Pay and reimburse PIIC for its reasonable attorney's fees and costs incurred in the prosecution of this action; and

(d) Any such other relief as this court deems necessary, just, and proper.

## COUNT IV
## QUIA TIMET AGAINST INDEMNITORS

69. PIIC realleges and reaffirms allegations contained in paragraphs 1 through 40 as if fully set forth herein.

70. This is an action, in the alternative, for *quia timet* seeking equitable relief.

71. Bond obligees, Turner and Kaufman, have made claims on the Bonds. Further, PIIC anticipates future Payment Bond Claimants on the Delta Terminal Bond.

72. PIIC provided notice to, and demanded indemnity and exoneration from the Indemnitors under the terms of the Indemnity Agreement, requiring them to post sufficient collateral to protect PIIC from losses and expenses incurred in connection with the Bonds.

73. The Indemnitors have breached their obligations under the Indemnity Agreement by refusing to exonerate or otherwise post collateral with PIIC sufficient to cover the losses and expenses incurred or that will be incurred by PIIC. Unless the assets of the Indemnitors are

provided to PIIC as collateral, PIIC will not be adequately secured for its obligation on the Bonded Contracts.

74. By virtue of the Indemnity Agreement and the common law and equitable doctrine of *quia timet*, PIIC is entitled to have the Indemnitors post funds or other security with PIIC that is sufficient to cover the bond losses and claims under the Bonds.

75. Without the equitable relief requested herein, PIIC will be prejudiced because it will be required to advance further funds in connection with claims on the Bonds. PIIC is fearful and apprehensive that the Indemnitors are or will become financially unable to pay amounts that may be owed to the obligees and/or claimants under the Bonds for which PIIC may be liable, or that the Indemnitors, based on their refusal to exonerate PIIC in accordance with its demands, will sell, transfer, dispose of, encumber, lien, secure or otherwise divert or conceal their assets.

76. Unless relief in the nature requested herein is granted, PIIC's equitable right of *quia timet* will forever be lost, depriving PIIC of adequate security from the Indemnitors for PIIC's obligations to make payments to obligees and/or claimants under the Bond. Further, unless the relief requested herein is granted, the Indemnitors are likely to sell, transfer, dispose of, encumber, lien, secure or otherwise divert or conceal their assets from being used to discharge the Indemnitors' obligations to exonerate and indemnify PIIC.

WHEREFORE, PIIC respectfully requests that the Court enter final judgment against the Indemnitors for damages, plus costs, interest and attorney's fees, and order the Indemnitors to immediately post collateral with PIIC in the amount of $1,075,000.00 for anticipated losses or expenses for which PIIC is or may be liable in connection with the Bonds. Alternatively, PIIC requests that the Court order the Indemnitors to deposit $1,075,000.00 with the Clerk of this Court, for the benefit and protection of PIIC.

DATED this 10th day of February, 2021.

        Respectfully submitted,

        TAYLOR ESPINO VEGA & TOURON, PLLC
        *Attorneys for Philadelphia Indemnity Insurance Company*
        201 Alhambra Circle, Suite 801
        Coral Gables, Florida 33134
        Telephone: (305) 443-2043
        Facsimile: (305) 443-2048

        By:  /s/ Timothy S. Taylor
             TIMOTHY S. TAYLOR
             Florida Bar No. 545015
             ttaylor@tevtlaw.com
             vperez@tevtlaw.com
             PAUL WASHINGTON
             Florida Bar No. 60107
             pwashington@tevtlaw.com
             KRISTINA L. PUENTE
             Florida Bar No. 107690
             kpuente@tevtlaw.com